The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARCHELINO T. PALPALLATOC,

    Plaintiffs,

v.

THE BOEING COMPANY, et al.,

    Defendants.

Civil Action No. 3:22-cv-5728-BJR

ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff Archelino Palpallatoc brought this employment-discrimination action against Defendants The Boeing Company, Managers Kyle Churchill, Cary Fiske, Michelle Bartlette, Jaime Guzman, Thomas Poppie, and three John Doe managers, alleging violations of the Washington Law Against Discrimination, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"). Defendants moved to dismiss and for a more definite statement, and Plaintiff amended his complaint to correct some of the deficiencies Defendants had identified. Defendants no longer move for a more definite statement but maintain their motion to dismiss as to Plaintiff's IIED and NIED claims. Having reviewed the motion, the opposition

thereto, the record of the case, and the relevant legal authorities, the Court will grant Defendants' partial motion to dismiss. The reasoning for the Court's decision follows.

## II.   BACKGROUND

Plaintiff was a Boeing employee from 1996 until 2022, leading a team that assembled 777-series planes. Dkt. 17-1 ¶¶ 3.5-3.6. Plaintiff is Filipino, and the majority of the employees on his team also belonged to racial or ethnic minorities. *Id.* ¶ 3.5. In 2019, Plaintiff was working under Manager Kyle Churchill. *Id.* ¶ 3.14. On April 27, 2019, an incident occurred in which Churchill demanded that Plaintiff complete a flooring project, but Plaintiff refused, claiming that "it would [have been] unsafe to install flooring" at that time. *Id.* The confrontation between Plaintiff and Churchill quickly escalated, with Churchill allegedly screaming at Plaintiff to complete the project, "subjecting [Plaintiff] to extreme stress with belligerence and unsafe and threatening direction." *Id.* ¶ 3.15. According to Plaintiff, he attempted to "retreat" from the confrontation by walking away, but this apparently incensed Churchill, as he followed Plaintiff and continued to demand that he follow Churchill's orders. *Id.* Churchill then called security to have Plaintiff escorted out of the work site. *Id.* ¶ 3.20.

Despite this confrontation with Churchill, Plaintiff was not fired or demoted and continued to work at Boeing. *See id.* ¶ 3.23. Another manager, Cary Fiske, allegedly "tried to pressure or bully Plaintiff to agree that 'it was a miscommunication'" and noted that Plaintiff was "being disrespectful to [Churchill]." *Id.* Plaintiff disagreed with this characterization and reported the incident to the Boeing ethics office. *Id.* ¶¶ 3.25-3.26. Plaintiff then attempted to elevate his complaint to senior management, claiming that Churchill's actions were part of a broader pattern that had created a hostile work environment for Plaintiff and other "highly qualified minority employees." *Id.* ¶ 3.30. In the complaint, Plaintiff described other incidents in which Churchill

had allegedly been hostile toward minority employees. *Id.* ¶ 3.32. Plaintiff requested that he be transferred to a different unit, but his request was denied.[1] *Id.* 3.31.

On May 10, 2019, Plaintiff began a period of medical leave. *Id.* ¶ 3.36. He continued to pursue his internal complaint but was informed that the "case ha[d] been closed." *Id.* ¶ 3.41. When Plaintiff returned from medical leave in July 2019, Boeing management allegedly "continued its hostile practices by transferring inexperienced temporary to [Plaintiff's team]." *Id.* ¶ 3.46. Managers Churchill and Fiske were still in charge of Plaintiff's team. *Id.* ¶¶ 3.53, 3.109-3.111. On January 4, 2020, Plaintiff was copied on an email chain initiated by Fiske and, for reasons that are not clear, Fiske shared a "disturbing picture appearing to be ethnic people of color on their knees in a cage reaching through the bars and being guarded by a large dog." *Id.* ¶¶ 3.57-3.59. This led Plaintiff to file another internal complaint, describing the photo as "intimidating, harassing, [and] racist." *Id.*

Plaintiff alleges that, rather than resolve his complaint and punish Churchill and Fiske, Boeing retaliated against Plaintiff by "permanently transferring him to the undesirable [unit within the company]" in September 2020. *Id.* ¶ 2.14. Plaintiff also claims that Boeing "removed [him] from . . . [his] Lead position." *Id.* ¶¶ 3.82-3.91. Plaintiff attempted to transfer to a more desirable unit but was allegedly "blackballed" from any transfer or promotion while Fiske and Churchill were still there. *Id.* ¶¶ 3.96-3.101. By May 2022, Churchill had left and Fiske was transferred. It appears Plaintiff returned to his former unit, although "he had been . . . replaced as Team Lead by . . . a younger and newer employee." *Id.* ¶¶ 3.102-3.106, 3.108.

---

[1] Plaintiff was ultimately transferred to a different unit in September 2020 after additional problems with Fiske and Churchill arose (described *infra*), but, according to Plaintiff, the unit to which he was transferred was less desirable than Plaintiff appears to have requested.

Plaintiff's amended complaint details the emotional injuries he allegedly suffered as a result of Defendants' conduct, including "[having] to take medication [for] depression and anxiety associated with going to the workplace." *Id.* ¶¶ 3.109-3.111. He also describes economic injuries associated with being effectively demoted to a less desirable unit within the company and having his former position filled by another employee. *Id.* ¶¶ 3.102-3.104, 3.108.

### III.   DISCUSSION

#### A.   12(b)(6) Standard

Upon a motion by a defendant, dismissal is appropriate if the Complaint does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss under Rule 12(b)(6), the Court will accept all of plaintiff's plausible allegations as true and construe them in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

#### B.   Intentional Infliction of Emotional Distress

To state an IIED claim, a plaintiff must prove "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Trujillo v. NW Trustee Servs., Inc.*, 183 Wash.2d 820, 840 (2015) (citing *Lyons v. US Bank Nat'l Ass'n*, 181 Wash.2d 775, 792 (2014)). "Extreme and outrageous" conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation omitted). Although generally a question of fact, "the court makes the initial determination

of whether reasonable minds could differ about whether the conduct was sufficiently extreme to result in liability." *Id.* (citation omitted).

Plaintiff alleges that the following conduct by various Boeing supervisors qualified as extreme and outrageous:

> Churchill . . . chased Plaintiff, yelled at Plaintiff and called security to have Plaintiff escorted off the property . . . . Churchill was abusive when [Plaintiff] merely explained why as Team Lead he exercised his knowledge of safety and his experience to not put his crew in harm's way—that is, not having his crew perform a job that was unsafe. . . . Fiske unsuccessfully pressured Plaintiff to concede it was simply a 'miscommunication' with Churchill.  Fiske then intimidated Plaintiff . . . . [by sending him] an offensive and distressing email . . . with a picture of ethnic people of color on their knees in a cage reaching through the bars being guarded by a large dog. . . . [Plaintiff describes] Defendants' . . . retaliatory transfer to an 'empty' job, isolating Plaintiff from colleagues, blocking advancement, blocking overtime pay, shunning him, ignoring his pleas, publicly humiliating him . . . . resulting in shaking, depression, extreme anxiety, medication, medical leave, and ongoing medical care.

Dkt. 18 at 14-15 (emphasis removed) (citing Dkt. 17-1 ¶¶ 3.13-3.64).

Defendants cite a number of cases in which more extreme conduct than that described by Plaintiff was found to be insufficient for an IIED claim.  *See* Dkt. 21 at 2-4 (citing *Snyder v. Medical Serv. Corp. of Eastern Wash.*, 98 Wash. App. 315, 319, 322 (1999) (finding no sufficiently outrageous conduct when defendant "insulted, threatened, annoyed, showed unkindness, and acted with a callous lack of consideration" including telling plaintiff "I will literally hunt you down and kill you"); *Strong v. Terrell*, 147 Wash. App. 376, 381, 387 (2008) (affirming dismissal of IIED claim where plaintiff claimed defendant supervisor "very abused her daily by screaming at her" and caused her to "vomit and to have anxiety attacks, depression, and heart palpitations"); *Jones,* 439 F. Supp. 2d  1149, 1170 (W.D. Wash. 2006) (dismissing IIED claim because "multiple incidents of explicit and veiled harassment and racial hostility and age discrimination" did not constitute outrageous conduct)).

Plaintiff does not present any case law to counter Defendants', and the Court is persuaded

that the conduct in this case does not qualify as extreme and outrageous within the meaning of an IIED claim, and that reasonable minds could not differ on this conclusion. As Defendants note, "[t]he level of outrageousness required is extremely high," and the conduct alleged by Plaintiff—verbal abuse and demeaning behavior—is less extreme than the conduct alleged in many cases where courts dismissed IIED claims. Accordingly, the Court grants Defendants' motion to dismiss as to Plaintiff's IIED claim.

C.     **Negligent Infliction of Emotional Distress**

"Like all negligence claims, a negligent infliction of emotional distress claim requires duty, breach, proximate cause, and injury." *Snyder*, 98 Wash. App. at 323 (citing *Hunsley v. Giard*, 87 Wash. 2d 424, 434-35 (1976)). Notably, when brought alongside a discrimination claim, a separate claim for emotional distress is not compensable when the allegations supporting the emotional distress claim are the same as those underlying the discrimination claim. *See id.*; *Chea v. Men's Wearhouse, Inc.*, 85 Wash. App. 405, 413 (1997).

Here, Plaintiff alleges that Churchill's and Fiske's "extreme" conduct—including Churchill's yelling at and embarrassing Plaintiff and the offensive photo circulated by Fiske—the failure of other Boeing supervisors to act on Plaintiff's complaints, and the retaliatory transfer and replacement of Plaintiff all support an NIED claim. *See* Dkt. 18 at 17. Plaintiff does not even attempt to segregate which of his allegations support his NIED claim as distinct from his discrimination claim. Rather, it is clear the allegations supporting each of the claims are virtually the same. All of the conduct that Plaintiff alleges caused him emotional distress—Churchill yelling at him, supervisors not acting on his complaints and transferring him to an undesirable unit—he also alleges to be discriminatory in either purpose or result. *See* Dkt. 18 at 1-6, 14-15.

Plaintiff cites *Chea*, a case in which the court upheld a jury verdict awarding separate damages for an NIED claim and a discrimination claim. *Chea*, 85 Wash. App. at 413. What

distinguishes *Chea* from the case before this Court is that the plaintiff in *Chea* had alleged a "pivotal incident," related only to his NIED claim, in which a manager had "grabbed [the plaintiff] by the lapels and said, 'I don't give a f*** whose f***ing up it is, I want a customer taken care of.'" *Id.* at 408, 413.  The court noted that "a separate claim for emotional distress is not compensable when the only factual basis for emotional distress [is] the discrimination claim," but it found that principle was inapplicable because the "pivotal incident" independently supported an NIED claim and was not part of Plaintiff's discrimination claim.  *Id.* at 413; *Snyder*, 98 Wash. App. at 324 (later confirming this aspect of *Chea*).

In the case before the Court, there is no separate, non-discriminatory incident or conduct that independently supports Plaintiff's NIED claim.  Accordingly, the Court grants Defendants' motion to dismiss the NIED claim.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's partial motion to dismiss (Dkt. 12) is GRANTED and Plaintiff's IIED and NIED claims are dismissed.

DATED this 22nd day of February, 2023.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE