The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARCHELINO T. PALPALLATOC,

    Plaintiff,

v.

THE BOEING COMPANY, *et al.*,

    Defendants.

NO. 22-cv-5728

**ORDER GRANTING IN PART AND DENYING IN PART THE BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff, Archelino Palpallatoc, brought this employment discrimination action against his employer, The Boeing Company ("Boeing"), together with named and unnamed individual Boeing managers and employees, alleging violations of the Washington Law Against Discrimination ("WLAD").[1] Mr. Palpallatoc also asserted claims of intentional and negligent infliction of emotional distress, which this Court dismissed. Order, ECF No. 28. Currently pending before the Court is Boeing's Motion for Summary Judgment, ECF No. 51, which Mr. Palpallatoc opposes. Having reviewed the parties' filings,[2] the record of the case, and the relevant legal authorities, the

---

[1] Boeing is the only Defendant to have been served.
[2] Mot., ECF No. 51; Opp'n, ECF No. 70; Reply, ECF No. 74, and Surreply, ECF No. 80-1, together with the accompanying exhibits and declarations.

Court grants in part and denies in part Boeing's motion. The reasoning for the Court's decision follows.

## II.    BACKGROUND[3]

Mr. Palpallatoc has been employed by Boeing since 1996. Compl. ¶ 3.5, ECF No. 32.[4] On April 27, 2019, an incident occurred between Mr. Palpallatoc and Kyle Churchill, a Boeing manager, which escalated to Mr. Churchill screaming at Mr. Palpallatoc and having Mr. Palpallatoc escorted from the work site by security. *Id.* ¶¶ 3.14-3.21. Mr. Palpallatoc lodged complaints internally at Boeing, without satisfactory resolution. *Id.* ¶¶ 3.26-3.42. The stress from the confrontation and the "hostile" work environment led to Mr. Palpallatoc being placed on medical leave from May to July 2019. *Id.* ¶¶ 3.25, 3.35, 3.46. Mr. Palpallatoc alleges that the environment remains hostile, but he "has planned to work until he is 70 years old to have maximum retirement for his family," so he takes medication and continues to suffer from depression and anxiety associated with the workplace. *Id.* ¶¶ 3,109-3.111.

As a result of the incident, in May 2019, Mr. Palpallatoc filed a workers' compensation claim for "brain/mental/stress" injury. Accident Report, ECF No. 56-1. He was awarded $20,548.51 permanent partial disability, and the claim was closed on December 27, 2022. Claim Status Ltr., ECF No. 56-4. But as a result of his ongoing stress over the incident, an alleged hostile work environment, and alleged retaliation that he experienced due to his internal complaints, Mr. Palpallatoc filed this lawsuit in September 2022 in the Pierce County Superior Court. State Ct.

---

[3] For a more detailed background of the events leading up to the lawsuit, see Order Granting Defendants' Partial Motion to Dismiss, ECF No. 28.
[4] The operative complaint is Plaintiff's Corrected First Amended Complaint, ECF No. 32. Mr. Palpallatoc sought to amend his complaint a second time, but his motion to amend was denied. *See* Order, ECF No. 47.

ORDER GRANTING IN PART AND DENYING IN PART THE BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT

- 2

Compl., ECF No. 1-1. The case was removed to this Court on September 30, 2022. Not. Removal, ECF No. 1. Mr. Palpallatoc makes claims of a hostile work environment, race/national origin discrimination, age discrimination, and retaliation. Boeing asserts that Mr. Palpallatoc fails to present admissible evidence to support his claims and by its summary judgment motion, it seeks dismissal of all claims.

### III. LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)); Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion." *Id.* If the evidence proffered by the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c); *cf. JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (noting that "at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony").

## IV.   DISCUSSION

Mr. Palpallatoc asserts claims against Boeing for "violation of RCW 49.60.010 et seq, the Washington Law Against Discrimination and RCW 49.44.090," including claims of discrimination, hostile work environment, and retaliation "as to which the following bases are alleged to be 'substantial factors' in the discriminatory and retaliatory conduct: factors are alleged to include his national origin, race and ethnicity, his association with his team of predominately minority employees, his age being over 50, and his 'protected activity' of opposing practices forbidden by RCW 49.60." Compl. ¶ III.3. Although Mr. Palpallatoc's claims are not a model of clarity, based on the arguments presented by both parties, the Court addresses the following causes of action: (1) hostile work environment; (2) race/national origin discrimination; (3) age discrimination; and (4) retaliation.

**A. Hostile Work Environment**

In order to establish a hostile work environment claim under the Washington Law Against Discrimination ("WLAD"), a plaintiff must show: (1) unwelcome harassment (2) that is attributable to membership in a protected class (3) that affected the terms or conditions of employment and (4) that can be imputed to the employer. *Davis v. State, Washington State Patrol*, 184 Wn. App. 1002, 2014 WL 5144762, at *9 (2014) (citing *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 275 (2012)). WLAD requires that the conduct of unwelcome harassment be "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." *Glasgow v. Georgia–Pacific, Corp.*, 103 Wn.2d 401, 406 (1985). Courts determine whether "an environment is sufficiently hostile or abusive by looking at all the circumstances, including frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (citation omitted); *Glasgow*, 103 Wn.2d at 407. "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Dominguez–Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005) (quoting *Faragher*, 524 U.S. at 788).

Boeing argues that the Kyle Churchill incident in April 2019 is time-barred,[5] and the vague assertions of other complained-of acts do not rise to the severe and pervasive level required for a hostile work environment claim. Mot. 15-17; Reply 4-8. Mr. Palpallatoc asserts that courts recognize that individual acts may span the statute of limitations and argues that Churchill's offensive behavior was part of a pattern of the new management team put in place in 2018-19 that used harassment as their management strategy over the minority workgroup. Opp'n 16-17.

To determine if an alleged act should be considered an exception to the statute of limitations under the continuing violation doctrine, the Court considers whether the act was rooted in a discriminatory policy or practice that continued into the limitations period (a systemic violation), or whether there was a substantial relationship between the timely and untimely conduct (a serial continuing violation). *Antonius v. King Cnty.*, 153 Wn.2d 256, 262 (2004). As evidence of a systemic violation, Mr. Palpallatoc cites the following:

- Manager Cary Fiske's deposition at 246, ECF No. 70-6, stating that the team was largely made up of employees of color;

---

[5] WLAD hostile work environment claims have a 3-year statute of limitations. RCW 49.60; RCW 4.16.080(2); *Antonius v King Cnty.*, 153 Wn.2d 256, 261-62 (2004).

ORDER GRANTING IN PART AND DENYING IN PART THE BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT

- 5

- Gustavo Martinez declaration and email dated May 10, 2019, Exhibit 2, ECF No. 70-1,[6] which appears to describe the Churchill incident, and states in paragraph 46 that Mr. Palpallatoc set an example for speaking up, but after seeing how he was treated, especially the Asian workers were afraid to come forward about how they were treated. Also, paragraphs 12-14, which describe the new manager team as "a group of Caucasian males in their 30's who were chums with each other" and did not show respect for Mr. Palpallatoc or the team of long-term mechanics who were mostly "people of color." Mr. Martinez also described bullying and intimidating behavior by the new managers over the team, micromanaging writing up minor non-disciplinary deviations as disciplinary "CAMS" that could be used as a basis for termination, causing employees to be "terrified." *Id.* ¶¶ 14, 17, 18, 19, 23, 24. He described the environment as "degrading." *Id.* ¶ 29.

"The standard for linking discriminatory acts together in the hostile work environment context is not high." *Loeffelholz*, 175 Wn.2d at 276. Boeing argues that even if there is evidence of a hostile environment, Boeing's management investigated and intervened, which destroyed the connection between the earlier and later acts. Reply 5 (citing *Fall v. Delta Airlines, Inc.*, No. C-15-919-JCC, 2016 WL 2962232 at *7 (W.D. Wash. May 20, 2016)). The "court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Antonius*, 153 Wn.2d at 271 (quoting *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002)). Here, unlike the circumstances in *Fall*, the complained-of actions all relate to the change in management over the team that had been previously been led by Mr. Palpallatoc. The incidents are all part of the same claim of intimidating behavior by the team of new managers. And viewing the evidence in the light most favorable to Mr. Palpallatoc, the Court concludes that a

---

[6] The Court notes that Boeing objects to the declarations included in ECF No. 70-1. Objs., ECF No. 75-1. The Court considers some of this evidence, because it is possible for it to be presented in an admissible form, such as testimony from a witness. *See* Fed. R. Civ. P. 56(c)(4).

ORDER GRANTING IN PART AND DENYING IN PART THE BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT

- 6

reasonable jury could consider the Churchill incident as part of the overall alleged conduct that constituted a hostile work environment.

Mr. Palpallatoc complains that after the Churchill incident, he was subjected to ongoing hostile intimidation that caused him to be afraid to walk alone in the workplace and co-workers began walking with him so he wouldn't be so intimidated. Opp'n 17 (citing Martinez Decl. ¶¶ 17, 18, 25). The next specific act that Mr. Palpallatoc alleges contributed to a hostile work environment occurred in January 2020 when Level 2 Manager Cary Fiske sent an email portraying three men in a dungeon or jail cell with a large dog holding the key to the cell, which Mr. Palpallatoc interpreted as racist and depicting slavery. Opp'n 17; Pl.'s Dep. 190, ECF No. 70-13. Third level manager, Robert Lemley, counseled Mr. Fiske and other Level 2 managers to stop sending emails with images because the images could be misinterpreted. Lemley Email, Ex. 14, ECF No. 70-8. Mr. Palpallatoc also provided a declaration from another co-worker who "observed the workplace become increasing tense for Mr. Palpallatoc because managers began to single out Mr. Palpallatoc by reducing his work duties and cutting him out of the Over Time schedule when he previously worked overtime often." Huss Decl. ¶ 7, ECF No. 70-1. Mr. Huss added that he raised issues about the hostile environment to his Union Steward, and he personally observed managers using offensive language, yelling, and creating a tense and intimidating atmosphere in the workplace. *Id.* ¶¶ 15, 27, 29.

While a close call, considering all of the circumstances and viewing the evidence in the light most favorable to Mr. Palpallatoc, the Court determines that a reasonable jury could find that the acts of which Mr. Palpallatoc complains were more than isolated and unrelated incidents that negatively affected the terms and conditions of Mr. Palpallatoc's employment. The Court is mindful

that when "reviewing motions for summary judgment in the employment discrimination context, a court must 'zealously guard[ ] an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses.'" *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1002 (9th Cir. 2019) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004)).

### B.  Race/National Origin Discrimination

Mr. Palpallatoc claims that Boeing treated him less favorably because of his race/national origin, as a Filipino. Compl. ¶ 3.5.  When no direct evidence of discrimination exists, plaintiffs may prove a discrimination claim through circumstantial evidence, following the three-step burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hines v. Todd Pac. Shipyards*, 127 Wn. App. 356, 371 (2005).  Initially, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of a specific employment discrimination claim. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (citations omitted). If the plaintiff meets that burden, the burden shifts to the defendant "to articulate some legitimate, [nondiscriminatory] reason for" its actions. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802, 804). If the employer successfully presents a legitimate, non-discriminatory reason for its actions, "the presumption raised by the prima facie case is rebutted and drops from the case." *St. Mary's Honor Ctr. v. Hic*ks, 509 U.S. 502, 507 (1993) (citation omitted). At this point, the employee has an opportunity to introduce evidence that "the proffered reason was not the true reason for the employment decision, and that race was." *Id.* at 508 (citing *Burdine*, 450 U.S. at 256). The court must consider whether the jury could infer discrimination from the plaintiff's prima facie

ORDER GRANTING IN PART AND DENYING IN PART THE BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT

- 8

1  case and any other evidence the plaintiff offers to show that the actions were discriminatory or that
2  the non-discriminatory justification was pretextual. *See id.*

3  To establish a prima facie case of racial discrimination due to disparate treatment under
4  WLAD, a plaintiff must show that: "(1) he belongs to a protected class, (2) he was treated less
5  favorably in the terms or conditions of his employment (3) than a similarly situated, nonprotected
6  employee, and (4) he and the nonprotected "comparator" were doing substantially the same work."
7  *Johnson v. Dep't of Soc. & Health Servs.*, 80 Wn.App. 212, 227 (1996). Here, there is no dispute
8  that Mr. Palpallatoc is a member of a protected class. However, Boeing argues that Mr. Palpallatoc
9  fails to provide any evidence of an adverse employment action or that a nonprotected comparator
10 was treated more favorably. Mot. 20. Notably, Mr. Palpallatoc did not apply to, or otherwise seek
11 to fill, any management position, and he does not identify anyone who was promoted to a position
12 he might have wanted. *Id.* (citing Pl.'s Dep. 181-87, 287-88). In response, Mr. Palpallatoc fails to
13 put forth any evidence to establish that he applied for any position that was assigned to a similarly
14 situated, nonprotected employee. He argues that there were temporary manager positions filled
15 without being advertised, and that one position for which he was the most qualified, went to an
16 unqualified "Facebook friend" of Mr. Fiske's family. Opp'n 23. However, Mr. Palpallatoc adds
17 that he was on medical leave at the time that position was filled, the individual hired was Hispanic,
18 and Mr. Palpallatoc did not apply for or indicate his interest in the position. *Id.*

19 Mr. Palpallatoc fails to establish a prima facie case of disparate treatment. Therefore, the
20 Court will grant summary judgment on the racial discrimination claim.

ORDER GRANTING IN PART AND DENYING IN PART THE BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT

- 9

**C. Age Discrimination**

A plaintiff may establish a prima facie case of age discrimination by demonstrating that when the alleged failure to promote occurred, (1) he was at least forty years old, (2) he was qualified for the position for which the plaintiff applied, (3) he was denied the position, and (4) the employer gave the promotion to a substantially younger person. *Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012). Boeing asserts that Mr. Palpallatoc fails to establish a prima facie case of age discrimination, because although there is no dispute that he is over the age of 40, he admits that he did not apply for or express interest in any manager position until after filing this lawsuit. Mot. 27-28 (citing Pl.'s Dep. 54-55, 72-74, 185-187, 287-289; ECF No. 52-1; Ex. H, ECF No. 56-8).

Although Mr. Palpallatoc does not explicitly concede his age discrimination claim, his response to Boeing's motion for summary judgment is silent as to this claim. *See generally*, Opp'n; Surreply. And the record establishes that Boeing is entitled to summary judgment in its favor on this ground. Therefore, the Court grants Boeing's motion as to the age discrimination claim.

**D. Retaliation**

To establish a prima facie case of retaliation under the WLAD, a plaintiff must show: (1) he engaged in a protected activity; (2) defendant took an adverse employment action; and (3) retaliation was a substantial factor behind the adverse employment action. *Sims v. Lakeside Sch.*, 2008 WL 2811164, at *3 (W.D. Wash. July 16, 2008). Washington courts apply the *McDonnell Douglas* burden-shifting framework to WLAD retaliation claims. *Daniel v. Green*, 411 U.S. 792 (1973); *Dumont v. City of Seattle*, 148 Wn. App. 850, 862 (2009). Under this framework, if the plaintiff has established a prima facie case, the burden of production shifts to the defendants to advance legitimate, nonretaliatory reasons for any adverse actions taken against the plaintiff. *Sims*,

2008 WL 2811164, at *3. The plaintiff then has the ultimate burden of showing the defendant's proffered reasons are pretextual. *Id.* Once the record contains reasonable but competing inferences of both discrimination and nondiscrimination, it is for the jury to choose between the competing inferences. *Boyd v. State, Dep't of Soc. & Health Servs.*, 187 Wn. App. 1, 12 (2015).

Boeing moves for summary judgment contending that the undisputed material facts show Mr. Palpallatoc did not suffer an adverse employment action, and no reasonable jury could find that Boeing's proffered reasons for the employment transfers were based on retaliation. Mot. 23-24. "An adverse employment action involves a change in employment conditions that is more than an inconvenience or alteration of one's job responsibilities, such as reducing an employee's workload and pay." *Alonso v. Qwest Commc'ns Co., LLC*, 178 Wn. App. 734, 746 (2013) (citing *Campbell v. State*, 129 Wn.App. 10, 22 (2005)). "A demotion or an adverse transfer, or a hostile work environment, may also amount to an adverse employment action." *Id.* (citing *Kirby v. City of Tacoma*, 124 Wn.App. 454, 465 (2004), *review denied*, 154 Wn.2d 1007 (2005)). The Court has already found an issue of material fact with respect to the hostile work environment claim, but to show the requisite causal link, Mr. Palpallatoc "must present evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." *Kelley v. Cnty. of Ventura Pers. Dep't*, 28 F.3d 106 (9th Cir. 1994). Mr. Palpallatoc does not allege that his protected activity caused the hostile work environment. Rather, he contends that he suffered an adverse employment action because he "complained about 777 Unit's managers' racist conduct in the workplace." Opp'n 24. And Mr. Palpallatoc asserts that the adverse employment action was Mr. Fiske transferring him from the 777-model production line to the 777X Low-Rate Initial Production Line ("LRIP"). Opp'n 25.

ORDER GRANTING IN PART AND DENYING IN PART THE BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT

- 11

1      Mr. Palpallatoc argues that he was not given a body of work to complete and that although

2 he maintained his classification as a Team Lead, he was not assigned work as a Team Lead because

3 LRIP did not have a need for a team lead. *Id.* Boeing introduced evidence that Mr. Palpallatoc and

4 more than a dozen other employees were transferred to LRIP solely because they lived closer to the

5 location, and the decision was made by managers at a substantially higher level than Mr. Fiske or

6 Mr. Guzman. Mot. 22 (citing Mahan Decl. ¶¶ 8, 12, ECF No. 60).  Although Mr. Palpallatoc's

7 duties changed, he was allowed to retain his Team Lead title and Team Lead pay. *Id.* at 24. Mr.

8 Palpallatoc fails to show that his transfer was an adverse employment action.

9      Mr. Palpallatoc offers unfounded speculation that the transfer "seemed a little weird," and

10 a declaration from a co-worker who was also transferred and "believes" that management was

11 retaliating against them after making threats to do so. Opp'n 26 (citing Jeans Dep. 105, 125, ECF

12 No.70-5; Huss Decl. ¶¶ 12, 16, ECF No. 70-1). Mr. Palpallatoc contends that his move was not a

13 "geomove" and argues that since he was loaned back to the 777 team after Mr. Fiske was transferred

14 out of the 777 management, it is evidence that the earlier restriction to the LRIP team was

15 retaliatory. *Id.* at 26-27.  But Mr. Palpallatoc also admits that Boeing's workforce experienced

16 significant changes between 2018 and 2021 due to the COVID pandemic, the Boeing 737-MAX

17 grounding in 2019, and the winddown of the 747 and 787 production lines, which resulted in layoffs

18 and involuntary transfers of numerous employees. Pl.'s Dep. 94-101, ECF No. 52-1. And he

19 admitted that he had been a candidate for a geomove in October 2020 based on his home address,

20 but he provided Boeing with a false change of address to avoid being transferred, and then later

21 changed it back. *Id.* at 39-41.

ORDER GRANTING IN PART AND DENYING IN PART THE BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT

- 12

Mr. Palpallatoc's conjecture regarding the circumstances of his transfer is not evidence that the transfer was adverse, nor that he was transferred because of his complaints regarding management's racist conduct. A causal link can be inferred by close proximity in time. *Kelley*, 28 F.3d at 106. However, Mr. Palpallatoc has not provided evidence to support such an inference, stating only that Mr. Fiske selected him for transfer "[a]t his earliest opportunity." Opp'n 25. Mr. Palpallatoc has not presented sufficient evidence of a causal link to establish a prima facie case.

Accordingly, the Court will grant summary judgment on Mr. Palpallatoc's retaliation claim.

## V. CONCLUSION

For the foregoing reasons:

1. Boeing's Motion for Summary Judgment, ECF No. 51, is GRANTED IN PART and DENIED IN PART;

    a. Boeing's motion is GRANTED with regard to Mr. Palpallatoc's claims of Race/National Origin Discrimination, Age Discrimination, and Retaliation;

    b. Boeing's motion is DENIED with regard to Mr. Palpallatoc's claim of Hostile Work Environment.

2. Mr. Palpallatoc's Hostile Work Environment claim shall proceed to trial, which is scheduled to commence on July 22, 2024.

DATED this 29th day of March 2024.

Barbara Jacobs Rothstein
United States District Judge